UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SIMON HESSLER,<br>Petitioner,<br><br>v.<br><br>UNITED STATES,<br>Respondent. | No. 3:23-cv-1270 (SRU) |

### ORDER ON PETITION TO
### VACATE GUILTY PLEA AND SENTENCE
### UNDER 28 U.S.C. § 2255

Petitioner Simon Hessler ("Hessler") has filed a motion to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, I **deny** the motion.

**I.    Procedural History**

On December 11, 2019, Hessler pled guilty to production of child pornography[1] in violation of 18 U.S.C. § 2251(a) before Magistrate Judge William I. Garfinkel. *United States v. Hessler*, No. 3:19-cr-303 (SRU) ("Criminal Case"), Doc. No. 4. I approved and adopted the guilty plea on January 10, 2020 and sentenced Hessler to approximately twenty-nine years in prison on August 13, 2020.[2] Criminal Case, Docs. No. 12, 43. Judgment entered on September 2, 2020. Doc. No. 45. Attorney Bethany Phillips, then an associate at Butler, Norris, and Gold, represented Hessler during the pendency of his state and federal criminal cases. Hessler now

---

[1] "The term 'child pornography' is currently used in federal statutes . . . . While this phrase still appears in federal law, 'child sexual abuse material' is preferred, as it better reflects the abuse that is depicted in the images and videos and the resulting trauma to the child." *Child Sexual Abuse Material*, U.S. DEP'T OF JUST. 1 (June 13, 2023), https://www.justice.gov/d9/2023-06/child_sexual_abuse_material_2.pdf.
[2] I sentenced Hessler to 347 months of incarceration in order to account for the thirteen months he was detained before sentencing. *See* Sentencing Hr'g Tr., Doc. No. 48 at 40:3-40:13.

claims he received ineffective assistance of counsel from Attorney Phillips in federal plea negotiations.

Hessler did not directly appeal the federal criminal conviction. He also pled guilty to multiple state charges, *e.g.*, Risk of Injury to a Child, Sexual Assault in the Fourth Degree, and Attempt to Commit Commercial Sexual Abuse to a Minor. Conn. Conviction Case Detail, Nos. HHD-CR18-0265633-T, HHD-CR19-0181174-0.[3] Hessler's federal term of imprisonment runs concurrently with his state sentence. *See* Criminal Case, Doc. No. 45 at 1. He is currently in federal custody.[4]

## II.     Standard of Review

A section 2255 petition provides those in federal custody with an opportunity to challenge the legality of their sentences. It is the "proper vehicle when the federal prisoner seeks to challenge the legality of the imposition of a sentence by a court." *Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003) (cleaned up). To obtain relief, a petitioner must show that his sentence was invalid because (1) "the sentence was imposed in violation of the Constitution or the laws of the United States"; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum detention authorized by law; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

The standard is stringent; even constitutional errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal citations omitted); *see also Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999)

---

[3] Hessler pled guilty to the state charges on August 18, 2020. *Id.*
[4] Inmate Locator, No. 26624-014, https://www.bop.gov/inmateloc// (last visited Oct. 28, 2024).

(applying *Brecht*'s standard to section 2255 petitions). The petitioner bears the burden of proving that he or she is entitled to relief by a preponderance of the evidence. *Blackmon v. United States*, 2019 WL 3767511, at *4 (D. Conn. Aug. 9, 2019) (citing *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000)).

If a petitioner fails to raise an issue upon direct appeal, that issue will be deemed procedurally defaulted and unreviewable absent a demonstration of ineffective assistance of counsel, an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

A petitioner is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "Mere generalities or hearsay statements will not normally entitle the applicant to a hearing . . . . The petitioner must set forth specific facts which he is in a position to establish by competent evidence." *Dalli v. United States*, 491 F.2d 758, 760-61 (2d Cir. 1974) (citations omitted). In the absence of supporting facts, the court may resolve a petitioner's claims without a hearing. *See id.* at 760-62.

**III.   Discussion**

   A.   <u>Timeliness</u>

Section 2255 habeas corpus petitions must be filed within one year of the conviction becoming final—that is, when the petitioner has exhausted avenues for relief through direct appeal. 28 U.S.C. § 2255(f)(4); *Superville v. United States*, 771 F. App'x 28, 31 (2d Cir. 2019) (quoting *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) (per curiam)) ("For the purposes of § 2255(f)(1), 'an unappealed federal criminal judgment becomes final when the time

for filing a direct appeal expires.'"). "[T]he date on which the" section 2255 "limitations clock beg[ins] to tick is a fact-specific issue." *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)) (cleaned up); *see Rivas v. Fischer*, 294 F. App'x 677, 679 (2d Cir. 2008) (remanding to the district court to make factual findings regarding "whether a duly diligent person in petitioner's circumstances would have discovered the evidence . . .") (cleaned up). A habeas petitioner bears the burden of "of persuading the court that he exercised due diligence in discovering the factual predicate of his habeas claim." *Shabazz v. Filion*, 2006 WL 2792741, at *5 (N.D.N.Y. Sept. 26, 2006), *aff'd*, 402 F. App'x 629 (2d Cir. 2010) (cleaned up).

Hessler's deadline to appeal expired on September 16, 2020. *See* Criminal Case, Doc. No. 45 (judgment entered on September 2, 2020); *see United States v. Wright*, 945 F.3d 677, 683 (2d Cir. 2019) (citing 28 U.S.C. § 2255(f)(1) and Fed. R. App. P. 4(b)(1)(A)(i)) (when no notice of appeal is filed, the deadline to file a section 2255 habeas petition runs one year and fourteen days after judgment enters). Hessler did not file his habeas petition until September 27, 2023. Doc. No. 1. He should have filed the instant petition on or before September 16, 2021, one year after his deadline to appeal expired. Hessler nonetheless argues the petition is timely because (a) he uncovered "new evidence," (b) equitable tolling principles apply, and (c) he is actually innocent of the crime to which he pled guilty. Doc. No. 1 at 54-70.

1. *Equitable Tolling*

"To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)) (internal quotation marks omitted).

4

Hessler states in his petition—but not in his affidavit—Pierre Hessler retained Kent Mawhinney to represent Hessler in his postconviction proceedings on November 9, 2020. Petition, Doc. No. 1 at 25; Hessler Aff., Doc. No. 1 at 302 ¶ 29 ("My father, . . . and I were advised by Kent Mawhinney, . . . that Mr. Mawhinney was researching and developing a collateral attack on my plea and sentence."); *but see* Mawhinney Email, Doc. No. 1 at 562 (Mawhinney emails Pierre Hessler that he "need[s] to tighten up my work before meeting with counsel who specializes in post-judgment motions," suggesting that Mawhinney was not prepared to represent Hessler for post-conviction proceedings). Mawhinney was purportedly Hessler's cellmate, doc. no. 1 at 24, while Mawhinney faced criminal charges for conspiracy to commit murder.[5] His law license was suspended at the time. *See id.*

After Hessler and his father were "[n]ot seeing any indication that Mawhinney was performing as promised," they "sought assistance from other counsel." Petition, Doc. No. 1 at 26; *see also* Hessler Aff., Doc. No. 1 at 302 ¶¶ 29-30. Hessler does not specify when he terminated Mawhinney's representation, although the record suggests it was sometime after January 12, 2021. *See* Mawhinney Email, Doc. No. 1 at 561 (Mawhinney sent an email update to Pierre Hessler on January 12, 2021). Hessler appears to have retained current counsel in March 2022, about six months after the deadline to file his habeas petition. Petition, Doc. No. 1 at 26.

Attorney Mawhinney apparently never advised Hessler of section 2255's one-year statute of limitations, *id.* at 25-26, but Hessler's ignorance of the limitations period is insufficient to warrant equitable tolling. *See United States v. Valdez*, 2023 WL 2596911, at *3 (S.D.N.Y. Mar.

---

[5] *See* Alana Seldon, *Judge Suspends Kent Mawhinney's Law License, Appoints Clients New Attorney*, FOX61.COM, Jan. 28, 2020, https://www.fox61.com/article/news/judge-suspends-kent-mawhinneys-law-license-appoints-clients-new-attorney/520-cf4b96b5-319b-4e15-869b-ae8019ffb100 (last visited Oct 29, 2024).

5

22, 2023) ("[T]o the extent [the petitioner] may be asserting that he was unaware of the specific statutory deadline for his [§ 2255] filing, courts have held that ignorance of the law . . . is not sufficient to toll the statute of limitations.") (cleaned up). Negligence on part of Attorney Mawhinney is also insufficient to toll the limitations period. *See Holland v. Florida*, 560 U.S. 631, 651-52 (2010) (equitable tolling is not warranted for missed deadlines resulting from "a garden variety claim of attorney negligence") (cleaned up). Even if Hessler could demonstrate that the period Mawhinney purportedly represented him should be equitably tolled, his habeas petition—filed on September 27, 2023—was still filed 1 year, 7 months, and 20 days too late.

Second, Hessler makes generalized assertions that the COVID-19 restrictions at his prison and disruptions in court operations slowed his habeas efforts. Petition, Doc. No. 1 at 69. The COVID-19 pandemic is not in itself an "extraordinary circumstance[]" that warrants equitable tolling. *Hines v. United States*, 2021 WL 2456679, at *2-*3 (S.D.N.Y. June 16, 2021) (collecting cases).

Third, Hessler unsuccessfully solicited attorneys to represent him in postconviction proceedings from sometime in March 2021 to June 2022. [6] *See* Petition, Doc. No. 1 at 26. I decline to equitably toll the period Hessler searched for counsel. *See Geritano v. United States*, 2023 WL 3499511, at *6 (E.D.N.Y. May 17, 2023) ("Courts in this Circuit have routinely denied equitable tolling based on an inmate's *pro se* status.") (collecting cases). Although Hessler could not find an attorney, he could have filed his habeas corpus petition pro se within the limitations

---

[6] After Hessler retained Sussman & Goldman, he claims that further delays were due to missing outgoing mail in his prison and his counselor's willful failure to accommodate his legal team's visitation. Hessler Aff., Doc. No. 1 at 302-03 ¶¶ 32-37. Hessler's complaint of missing outgoing mail from prison is insufficient. *See Rivera v. United States*, 719 F. Supp. 2d 230, 234 (D. Conn. 2010), *aff'd*, 448 F. App'x 145 (2d Cir. 2011) (declining to toll the habeas deadline because the petitioner's complaints regarding "delays caused by the prison mail system were consistent with the ordinary inconveniences experienced by all prisoners") (cleaned up). "This is not to say that such inconveniences could never amount to extraordinary circumstances, but to do so they would have to impose a significant obstacle preventing petitioner from filing in a timely manner." *Id.*

6

period and later amended or supplemented it with the assistance of counsel. *See United States v. Wright*, 945 F.3d 677, 685 (2d Cir. 2019) (quoting *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004)) (when evaluating "reasonable diligence," courts "expect even *pro se* petitioners to know when the limitations period expires and to understand the need to file a habeas motion within that limitations period") (cleaned up); *cf. Csanadi v. United States*, 2016 WL 2588162, at *6 (D. Conn. May 4, 2016) (quoting *Nelson v. Quarterman*, 215 F. App'x 396, 398 (5th Cir. 2007)) (declining to equitably toll the limitations period because the petitioner "could have and should have filed a pro se skeletal petition rather than only the motion for appointment of counsel") (internal quotation marks omitted); *see also Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (incarcerated individuals have no constitutional right to counsel in post-conviction proceedings).

I therefore decline to equitably toll the one-year limitations period.

2. *New Evidence*

Section 2255(f)(4) prescribes when the limitations period begins to run:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
   * * *
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(4). "Section 2255[(f)](4) is not a tolling provision . . . . Rather, it resets the limitations period's beginning date[.]" *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000). Hessler argues that the limitations period runs from the date he discovered "new evidence" of Phillips's ineffective assistance of counsel. Petition, Doc. No. 1 at 61.

Hessler claims Attorney Phillips was ineffective because she never viewed the images underlying the federal charge, nor hired an expert to review the images or their metadata. Hessler Aff., Doc. No. 1 at 301-02 ¶ 23; *but see* Phillips Aff., Doc. No. 22-1 ¶ 10 ("I . . . traveled

7

to the State Forensic Lab on June 4, 2019, to review the images of the child pornography . . . I recall observing many images of child pornography."). Phillips advised Hessler that under the prevailing case law, Hessler had no reasonable defense. Hessler Aff., Doc. No. 1 at 302 ¶ 24. A postconviction forensic investigator retained by Hessler viewed the images in February 2023 and June 2023. Archer Aff., Doc. No. 1 at 367 ¶ 9. Investigator Michael Archer formed an opinion that the images did not meet the legal definition of child sexual abuse material. *Id.* at 369 ¶ 11; *id.* at 379-80 ¶ 27.

Attorney Phillips's alleged failure to view the images is, according to Hessler, "new evidence that . . . could not have been discovered earlier through any additional exercise of diligence[.]" Petition, Doc. No. 1 at 61.

Hessler's argument is unavailing. The Connecticut Forensics Laboratory's visitor register indicates that Attorney Phillips visited the forensics laboratory for one hour on June 4, 2019. Doc. No. 22-4 at 2. The visitor register and the images underlying the federal charge were already in existence at the time of Hessler's federal guilty plea—December 11, 2019—over three years before he filed the habeas petition. Hessler knew of the images' content via secondary descriptions in the plea agreement's stipulation of offense conduct. Redacted Plea Agreement, Criminal Case, Doc. No. 10 at 13-14. Hessler was aware of those images' existence and quantity. *See id.* Hessler admitted, in open court, that he had reviewed the plea agreement's stipulation of offense conduct. Waiver & Plea Hr'g Tr., Doc. No. 22-8 at 43:15-48:17 ("The Court: . . . the stipulation of offense conduct, which is pretty detailed in this case. Have you gone over those as well? The Defendant: Yes, your Honor."); *id.* at 50-51 (Judge Garfinkel asked Hessler if he admits to committing some of the specific offense conduct outlined in the plea agreement, and Hessler answers in the affirmative). If Hessler wanted to proceed to trial on

the argument that the images of Minor Victim One ("MV1") did not meet the legal definition of child sexual abuse images, Hessler should have raised that argument with Attorney Phillips before pleading guilty. If Hessler wanted to investigate whether Phillips had viewed the images—or for how long she viewed the images—nothing prevented him from doing so well within the limitations period. Section 2255's limitations period runs from the date "the facts supporting the claim . . . could have been discovered," not when new legal arguments can be drawn from previously known or previously knowable evidence. 28 U.S.C. § 2255(f)(4). The argument that the petition was timely because the discovery of new evidence reset the start date of the limitations period fails.

3. *Actual Innocence*

In the context of a habeas petition, "actual innocence" refers to factual innocence, not the alleged legal insufficiency of the evidence presented in the underlying criminal proceeding. *Bousley*, 523 U.S. at 623 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). "[A] claim of actual innocence could provide a basis for excusing a late filing even though petitioner pled guilty." *Cosey v. Lilley*, 62 F.4th 74, 85 (2d Cir. 2023) (quoting *Friedman v. Rehal*, 618 F.3d 142, 152 (2d Cir. 2010)) (cleaned up). "To make a threshold showing of actual innocence . . . a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Dhinsa v. Krueger*, 917 F.3d 70, 81 (2d Cir. 2019) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)) (cleaned up). A petitioner's claim that he is actually innocent "is not itself a constitutional claim. It serves instead as a gateway through which a habeas petitioner must pass to have his otherwise time-barred constitutional claim heard on the merits." *Cosey v. Lilley*, 62 F.4th 74, 77 (2d Cir. 2023) (citing *Schlup v. Delo*, 513 U.S. 298 (1995)).

"The petitioner's burden in making a gateway showing of actual innocence is deliberately 'demanding.'" *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). "It requires, first, that petitioner adduce new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (quoting *Schlup*, 513 U.S. at 324) (internal quotation marks omitted). A habeas court must "view the evidence in the light most favorable to the prosecution" and determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dhinsa*, 917 F.3d at 81 (quoting *Coleman v. Johnson*, 566 U.S. 650, 654 (2012)) (cleaned up). The court must evaluate the evidence's trustworthiness on its own merits and in light of pre-existing evidence in the record. *Schlup*, 513 U.S. at 327-28.

Hessler pled guilty to Production of Child Pornography, which mandates a fifteen-year term of imprisonment for "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a).[7] When he pled guilty in both state and federal court, Hessler admitted the essential elements of the felony charge. "[S]elf-inculpatory statements made under oath carry a strong presumption of verity." *United States v. Lam Peralta*, 792 F. App'x 68, 70 (2d Cir. 2019) (quoting *United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997)) (internal quotation marks omitted).

In his federal case, Hessler admitted under oath that 26 separate images depict his "penis *on and near* MV1's hand, bare feet, and bare stomach as well as Hessler's hand manipulating

---

[7] The offender must have known, or had reason to know, that the visual depiction would be transmitted in interstate commerce; was actually transmitted in interstate or foreign commerce, affected interstate or foreign commerce; or was produced or transmitted using materials that had been mailed, shipped, or transported in interstate or foreign commerce. *Id.*

10

MV1's breast." *See* Redacted Plea Agreement, Criminal Case, Doc. No. 10 at 13 (emphasis added); *see also* Plea Hr'g Tr., Doc. No. 22-8 at 47:18-47:23, 49:14-49:17.  He admitted that MV1, as depicted in the images, was a human child who "was under twelve years of age at the time."  Redacted Plea Agreement, Criminal Case, Doc. No. 10 at 13; *see also* Plea Hr'g Tr., Criminal Case, Doc. No. 22-8 at 47:24-47:25, 49:14-49:17.  He admitted that he "employed, used, persuaded, induced, enticed or coerced . . . MV1 to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."  Redacted Plea Agreement, Criminal Case, Doc. No. 10 at 13 (cleaned up).

Hessler admitted under oath at the Hartford state plea hearing that "the child in those photos was a real child and not one of these anatomically correct dolls that he had purchased . . . . So the sexual assault, the production charges involve an actual child."  Hartford Case Plea Hr'g Tr., Doc. No. 22-9 at 19; *id.* at 24 ("THE COURT: Are the facts that the state's placed on the record . . . essentially correct?  THE DEFENDANT: Yes, Your Honor."); *id.* at 28 ("THE COURT: . . . . And I asked you about whether the facts that were placed on the record by the state's attorney, if those were essentially correct, and is your response still yes to that question?  THE DEFENDANT: Yes, Your Honor.").[8]

At the Tolland state plea hearing, Hessler admitted to producing:

> [I]mages of the defendant's penis touching a juvenile female's feet. . . . that juvenile to be 12 years of age. . . . In one image, the child's hand is dangling at the wrist as if limp, and there is a penis touching her hand . . . . In another image it depicts an adult hand grabbing the same child's breast. . . . Lastly, . . . there was an image noted with a penis that appeared to be erect on top of the child's stomach and breasts.

---

[8] At oral argument of the present motion, Hessler suggests that the child dolls found by police in his "dungeon" that could have been the subject in the picture, not MV1.  *See also* Petition, Doc. No. 1 at 47 ("the images . . . provided insufficient evidence to conclude that the feet depicted even belonged to a minor child, . . . not to an adult or a lifelike doll").  But Hessler does not present affirmative evidence, in an affidavit or otherwise, to support the suggestion that the subject of the photos was a doll and not a child.

11

Tolland Case Plea Hr'g Tr., Doc. No. 1 at 486-87; *id.* at 494 ("THE COURT: . . . Mr. Hessler, you heard the facts as stated by the prosecutor. Do you essentially agree with those facts as stated?  THE DEFENDANT: Yes, Your Honor.").  Hessler admitted that those images depicted his penis.  *See id.* at 487.[9]

Despite those self-inculpating statements made under oath, Hessler argues that he is innocent because the images do not meet the statutory definition of child pornography.

4. *Whether the Images Depict Child Pornography*

Section 2251(a) requires that the offender "uses, . . . any minor to engage in, . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct."  18 U.S.C. § 2251(a).  "Sexually explicit conduct" includes "actual or simulated . . . lascivious exhibition of . . . genitals . . . of any person."  18 U.S.C. § 2256(2)(A)(v) (internal quotation marks omitted).  The *Dost* factors define "lascivious exhibition" by asking a court to consider, *inter alia*, "whether the setting of the visual depiction is sexually suggestive . . . whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity . . . whether the visual depiction is intended or designed to elicit a sexual response in the viewer."  *United States v. Close*, 2022 WL 17086495, at *2 (2d Cir. Nov. 21, 2022), *cert. denied*, 143 S. Ct. 1043 (2023) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)).

A minor's engagement in the sexually explicit conduct "can be active or passive." *United States v. Osuba*, 67 F.4th 56, 62 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 577 (2024). "[P]hysical contact is not a necessary component of passive engagement[,]" nor must the minor

---

[9] Furthermore, although not made under oath, Hessler wrote to a state probation officer, "I have not denied any of my actions . . . ."  Doc. No. 22-7 at 1.

be unclothed. *Id.* at 64. "[B]ecause § 2256 defines sexually explicit conduct to include 'actual or simulated' activity, if a sleeping child is used or manipulated in such a manner as to make it appear that she is engaging in sexually explicit conduct, then [§ 2251] is violated." *Id.* at 63 (quoting *United States v. Levy*, 594 F. Supp. 2d 427, 443 (S.D.N.Y. 2009)) (internal quotation marks omitted).

In *Osuba*, the offender filmed a video of himself masturbating close to a minor, "standing over the minor and ejaculating toward her, . . . missing her arm only narrowly." *Id.* at 60, 63. The offender did not physically touch the minor. *Id.* at 64. That conduct satisfied section 2251(a).

> By creating a video depicting . . . masturbation, the intended consummation of which was visibly directed toward a minor who was physically present, Osuba crossed the line from "a simple display of adult genitals around a sleeping minor" to showing his victim as "an inanimate body" upon which he was acting sexually.

*United States v. Osuba*, 67 F.4th 56, 62-63 (2d Cir. 2023) (quoting *United States v. Lohse*, 797 F.3d 515, 520-21 (8th Cir. 2015)) (cleaned up).

Hessler stakes his innocence claim on *United States v. Howard*, 968 F.3d 717 (7th Cir. 2020). In *Howard*, the government's sole argument on appeal was that section 2251(a) criminalized an individual "who made a video of *his own* solo sexually explicit content," regardless of if the minor was engaged in actual or simulated sexually explicit conduct. *Id.* at 721; *id.* at 723 ("The government staked its entire case for conviction on a mistaken interpretation of the statute."). That interpretation, "taken to its logical conclusion, . . . does not require the presence of a child on camera at all. The crime could be committed even if the child who is the object of the offender's sexual interest is in a neighbor's yard or across the street." *Id.* at 721. The *Howard* Court determined that the jury instructions had set forth an erroneous

interpretation of the statute.  *Id.* at 719, 723.  *Howard* only reached the jury instructions issue.  *Id.* at 723.

Both *Lohse* and *Osuba* are more germane to the instant petition.  In *Lohse*, the defendant seemed to challenge both the sufficiency of the evidence and the jury instructions.  797 F.3d at 521-22; *see Howard*, 968 F.3d at 723 ("Indeed, the Eighth Circuit [in *Lohse*] could not tell if the defendant was challenging the jury instructions or the sufficiency of the evidence.").  The *Lohse* Court reached both issues and upheld both the jury instructions and the evidence's sufficiency.  *Lohse*, 797 F.3d at 521-22.  *Lohse* analyzed the content of the child sexual abuse images.  *See id.* at 520-22.  *Osuba* did the same.  "[W]e address a question *Howard* did not reach, . . . . [W]e take a step *Howard* did not, *holding that on the facts of this case*, the minor's passive involvement as the intended recipient of Osuba's actions suffices . . . ."  *Osuba*, 67 F.4th at 64.  Hessler essentially asks me to ignore *Osuba* in favor of *Howard*.  But to ignore applicable and binding circuit precedent in favor of ill-suited, out-of-circuit precedent would belie the duties of a district court.

At oral argument, Attorney Sussman argued that the images cannot constitute child pornography because they depict Hessler's flaccid penis.  Even assuming that Hessler's penis was flaccid—a claim Hessler's own forensic investigator contradicts[10]—a reasonable jury could conclude that Hessler's conduct meets the legal definition of child pornography.  The images depict a "sleeping child used 'as a sexual object.'"  *Osuba*, 67 F.4th at 64 (quoting *Lohse*, 797 F.3d at 520-21); *see Lohse*, 797 F.3d at 521-22 (*Dost* factors met for images including a child "wearing pajamas and sleeping on a bed" and the offender's "flaccid penis near the child's cheek

---

[10] *Compare* Lothstein Report, Doc. No. 1 at 475 (Hessler "denied being erect or ejaculating"), *with* Archer Aff., Doc. No. 1 at 372 ("The image depicts:  a semi-erect penis, in proximity to two bottoms of human feet . . . . There are a number of photos showing Mr. Hessler in various states of erection.")

14

or mouth, and he is pulling or holding her hair . . ." because "the setting of the images was sexually suggestive; the images were intended to elicit a sexual response in the viewer; and K.S. was portrayed as a sexual object.").[11]

The *Dost* factors are "not mandatory, formulaic or exclusive." *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008). In cases where images only display "the adult defendant's genitals, many of the *Dost* factors simply do not apply." *Lohse*, 797 F.3d at 520. There was no reasonable explanation for Hessler to take photos of his genitals in close proximity to MV1—flaccid or not, touching MV1 or not—except to use MV1 to produce sexually explicit content. Hessler was no stranger to child sexual abuse images. Federal Plea Hr'g Tr., Doc. No. 22-8 at 49:3-49:6 ("[T]here were other child pornography images, unrelated to Minor Victim 1, that appeared to have been downloaded from the internet or the Dark Web by Mr. Hessler, that w[ere] also on the USB drive."); Redacted Plea Agreement, Criminal Case, Doc. No. 10 at 13 (Hessler possessed "eight hundred forty-nine images of suspected child pornography, with six hundred eighty-eight unique hash values. . . . [O]ne hundred thirty-five videos containing child pornography, with one hundred thirty-one being unique hash values[.]") (cleaned up).

The only reasonable description of the child sexual abuse images—from an adult man who possessed hundreds of other images and videos depicting child sexual abuse—is a "lascivious exhibition" of Hessler's genitals. *See* 18 U.S.C. § 2256(2)(A)(v). Like in *Osuba*, Hessler "crossed the line from a simple display of adult genitals around a sleeping minor to showing his victim as an inanimate body upon which he was acting sexually." *Osuba*, 67 F.4th at 63 (quoting *Lohse*, 797 F.3d at 521)) (cleaned up).

---

[11] *Lohse* was decided before Hessler pled guilty to both the state and federal charges. *See* Federal Plea Hr'g Tr., Doc. No. 22-8 at 1 (December 2019); *see* Hartford Plea Hr'g Tr., Doc. No. 1 at 402 (December 2019); *see* Tolland Plea Hr'g Tr., Doc. No. 1 at 482 (December 2019).

It is Hessler's burden to prove otherwise. *Dwyer v. United States*, 2016 WL 6782739, at *1 (D. Conn. Nov. 14, 2016). He does not.

5. *Hessler's Proffered Evidence of Actual Innocence is Insufficient*

Hessler's innocence claim[12] heavily relies upon Forensic Investigator Michael Archer's factual and legal opinions. Archer claims that he "reviewed a substantial portion of the digital evidence . . . . I have reviewed the images involving [MV1]." Archer Aff., Doc. No. 1 at 365. But Archer only describes, in detail, one image depicting Hessler's penis near MV1's feet and lower legs. "The image depicts: a semi-erect penis, in proximity to two bottoms of human feet. . . . There are a number of photos showing Mr. Hessler in various states of erection." *Id.* at 372. "Only feet and lower extremities are seen in the photo. They are not clearly the feet and lower extremities of a child." *Id.* at 371 (cleaned up). Archer agrees that the penis depicted in that image belongs to Hessler. *Id.* at 372 ("I . . . agree that it is Mr. Hessler's penis. Mr. Hessler has distinct penile anatomy.").

Neither Archer nor Hessler proffer affirmative evidence in their affidavits that approximately 25 other images depict, *inter alia*, "Hessler's penis on and near MV1's hand, bare feet, and bare stomach as well as Hessler's hand manipulating MV1's breast." *See* Redacted Plea Agreement, Criminal Case, Doc. No. 10 at 13; *see also* Plea Hr'g Tr., Doc. No. 22-8 at 47:18-47:23, 49:14-49:17. Archer makes only conclusory remarks about those 25 other images. *E.g.*, Second Archer Aff., Doc. No. 30 at 3 ("I reviewed all the photos and find none of them to raise to the level of the production of child pornography."). Archer's opinion that images cannot

---

[12] I focus my discussion on Hessler's factual innocence claim regarding the images themselves. Hessler additionally argues that he is factually innocent of Attempt to Commit Commercial Sexual Abuse to a Minor. *See* Doc. No. 1 at 62. I do not address the conduct underlying that state charge. Section 2255 only allows me to evaluate the conduct underlying the federal production charge, not Hessler's state charges. *See* 28 U.S.C. § 2255(a).

legally constitute child pornography is wholly irrelevant to the instant habeas petition, especially when Archer does not factually dispute the content of the 26 images. In any event, nothing in the Archer affidavit proffers "*new* reliable evidence"; it only offers alternative interpretations of old evidence. *Schlup*, 513 U.S. at 324 (emphasis added).

Other evidence in the record buttresses Hessler's actual guilt. Before his guilty plea, Hessler admitted to a clinical and forensic psychologist that he exposed himself to MV1. Lothstein Report, Doc. No. 1 at 475. Hessler "admit[ted] to sexually *touching* [MV1] . . . . He believes she was asleep the whole time." *Id.* (emphasis added). Attorney Phillips's affidavit similarly indicates that Hessler made sexual contact with MV1 in the images. Phillips Aff., Doc. No. 22-1 ¶ 10 ("These included images of . . . Simon's penis on [MV1's] stomach/breast area. There were also photos of his penis near her feet.") (cleaned up); *see also id.* ¶ 14 ("Mr. Hessler indicated to Lee Gold and to me that he was the person in the photos.").

I conclude that Hessler has not overcome the "strong presumption of verity" of his "[s]elf-inculpatory statements made under oath" at the guilty plea proceedings. *Lam Peralta*, 792 F. App'x at 70 (internal quotation marks omitted). Hessler does not meet the demanding standard required to sustain a claim of actual innocence.

B. Certificate of Appealability

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). A "final order" is an order "that dispose[s] of the merits of a habeas corpus proceeding." *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Hessler may obtain a certificate of appealability "only if" he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The motion, files, and

17

record of this case conclusively show that Hessler is entitled to no relief. Hessler has not demonstrated that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (cleaned up). I therefore decline to issue a certificate of appealability.

## IV.     Conclusion

For the reasons set forth above, Simon Hessler's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his conviction and sentence, **doc. no. 1**, is **denied**. The Clerk is instructed to enter judgment for the United States and close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 1st day of November, 2024.

/s/ STEFAN R. UNDERHILL  
Stefan R. Underhill  
United States District Judge